## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**KAREN SONGY**                                    **CIVIL ACTION**

**VERSUS**                                         **NO.  23-5700**

**SOCIAL SECURITY ADMINISTRATION**                 **SECTION: "G"(5)**

## ORDER AND REASONS

Before the Court is Plaintiff Karen Songy's ("Plaintiff") partial objection[1] to the Report and Recommendation of the United States Magistrate Judge assigned to the case.[2]  This Social Security appeal is currently before the Court for a second time. Plaintiff previously sought judicial review of the Social Security Administration's denial of her claim for disability insurance benefits ("DIB") under the Social Security Act (the "Act").[3] On February 13, 2019, this Court remanded the case to the Administrative Law Judge ("ALJ") because the Court found that the ALJ's residual functional capacity ("RFC") determination was not supported by substantial evidence.[4] On remand, the Court ordered that "the ALJ should request clarification from Plaintiff's treating physician and may request a supplemental opinion from the consultative examiner, or both."[5]

---

[1] Rec. Doc. 20.

[2] Rec. Doc. 19.

[3] Case No. 17-10209, Rec. Doc. 1.

[4] Case No. 17-10209, Rec. Doc. 17.

[5] *Id.* at 22.

On remand, the ALJ did not contact the treating physician, Dr. Glynn Hebert, or order a consultative examination, and issued a decision once again denying benefits.[6] The Magistrate Judge recommends that the case be remanded to the ALJ for a second time.[7] Plaintiff objects to the recommendation, in part.[8] Plaintiff contends that the case should be remanded for an award of benefits, rather than remanded for further administrative proceedings.[9] Considering the Report and Recommendation, Plaintiff's partial objections, the Commissioner's response, the record, and the applicable law, the Court overrules Plaintiff's partial objection, adopts the Report and Recommendation, and remands the case for further proceedings consistent with this opinion.

## I. Background

Plaintiff filed an application for DIB on November 13, 2014, alleging that she had been disabled since August 23, 2014, due to "degenerative arthritis worse in hips, knees, shoulders;" diabetes, hypertension, lupus, fibromyalgia, and high cholesterol.[10] After Plaintiff's claim was denied at the agency level, Plaintiff requested a hearing before an ALJ, which was held on May 25, 2016.[11]

On June 17, 2016, the ALJ issued a decision denying Plaintiff's application for benefits.[12]

---

[6] Adm. Rec. at 292–310.

[7] Rec. Doc. 19.

[8] Rec. Doc. 20.

[9] Rec. Doc. 20-1 at 1.

[10] Adm. Rec. at 141–42, 160.

[11] *Id.* at 33–72.

[12] *Id.* at 7–18.

The ALJ found that through the date last insured, Plaintiff had the residual functional capacity ("RFC") to perform a range of light work, "as she could . . . stand and/or walk for six hours per eight-hour work day and sit for six hours per eight-hour work day, all with normal breaks."[13] The ALJ found that through the date last insured, Plaintiff was capable of performing her past relevant work as an optician, tutor, assistant manager, library aide, and teacher aide.[14] Therefore, the ALJ determined that Plaintiff was not disabled from August 23, 2014, the alleged onset date, through December 31, 2014, the date Plaintiff was last insured for disability benefits under Title II.[15]

Plaintiff requested review by the Appeals Council. The ALJ's decision became the final decision of the Commissioner for purposes of this Court's review after the Appeals Council denied review on August 4, 2017.[16] On October 5, 2017, Plaintiff filed a complaint seeking judicial review pursuant to Section 405(g) of the Act.[17] Plaintiff argued that the ALJ improperly substituted her own medical opinion for the opinions of Plaintiff's treating physician, Dr. Glynn Hebert, and the consulting examiner, Dr. Felix Rabito.[18] Specifically, Plaintiff argued that an RFC checklist questionnaire completed by Dr. Hebert on April 14, 2016, and a narrative report completed by Dr.

---

[13] *Id.* at 14.

[14] *Id.* at 17.

[15] *Id.*

[16] *Id.* at 1–6.

[17] Rec. Doc. 1.

[18] Rec. Doc. 13.

Rabito on January 6, 2014, do not support the ALJ's RFC determination that Plaintiff can stand and/or walk for six hours of an eight hour day, as is required of "light" work.[19]

On February 13, 2019, this Court remanded the case to the ALJ because the Court found that the RFC determination was not supported by substantial evidence.[20] The Court found that there was no evidence supporting the ALJ's finding that Plaintiff could stand or walk for six hours in an eight-hour workday.[21] On remand, the Court ordered that "the ALJ should request clarification from Plaintiff's treating physician and may request a supplemental opinion from the consultative examiner, or both."[22]

On remand, the ALJ held a supplemental hearing.[23] The ALJ did not contact the treating physician, Dr. Hebert, or order a consultative examination. Thereafter, the ALJ issued a decision once again denying benefits.[24] In that decision, the ALJ concluded that Plaintiff has the severe impairments of obesity, myofascial pain syndrome, degenerative disc disease, and degenerative joint disease.[25] The ALJ found that Plaintiff retained the residual functional capacity to lift and carry 20 pounds occasionally and 10 pounds frequently; to stand and/or walk two hours in an eight-hour workday; to sit for six hours in an eight-hour workday; to never climb ladders, ropes, or

---

[19] *Id.* (citing Adm. Rec. at 280, 227–29).

[20] Case No. 17-10209, Rec. Doc. 17.

[21] *Id.*

[22] *Id.* at 22.

[23] Adm. Rec. at 311–45.

[24] *Id.* at 292–310.

[25] *Id.* at 297.

scaffolds; to occasionally stoop, bend, kneel, crouch, and crawl; to occasionally reach overhead with her bilateral upper extremities; to frequently reach in all other directions; to frequently handle and finger with her bilateral upper extremities; and to occasionally tolerate exposure to uneven terrain. [26] The ALJ determined that Plaintiff was unable to perform any past relevant work, but there were jobs that existed in significant numbers in the national economy that Plaintiff could perform: appointment clerk, order taker, microfilming document preparer, information clerk, and surveillance system monitor. [27]

The Appeals Council also denied Plaintiff's request for review. [28] Plaintiff then sought judicial review in this Court for a second time. [29] Pursuant to 28 U.S.C. § 636(b) and Local Rule 73.2(B), the case was referred to a United States Magistrate Judge to prepare a Report and Recommendation.

The Magistrate Judge recommends that the case be remanded to the ALJ for a second time. [30] The Magistrate Judge found that the ALJ erred by failing to follow this Court's directive on the first remand. [31] The Magistrate Judge determined that the ALJ erred by failing to contact Dr. Hebert—or at the very least order a further consultative examination—to obtain further evidence

---

[26] *Id.* at 299.

[27] *Id.* at 302–04.

[28] *Id.* at 285–91.

[29] Rec. Doc. 1.

[30] Rec. Doc. 19.

[31] *Id.* at 11.

regarding Plaintiff's functional capacity evaluation or the effects of Plaintiff's condition on her ability to work.[32]

## II. Objections

### A.    Plaintiff's Objections

Plaintiff objects to the recommendation, in part.[33] Plaintiff contends that the case should be remanded for an award of benefits, rather than remanded for further administrative proceedings.[34] Plaintiff argues a remand for further administrative proceedings will be futile because Dr. Hebert passed away and a consultative examiner would be unable to project Plaintiff's condition from 10 years ago.[35] Plaintiff argues this case is similar to a recent Fourth Circuit opinion holding that benefits should be immediately awarded where the ALJ repeatedly failed to properly apply the treating physician rule.[36]

### B.    The Commissioner's Response

The Commissioner argues Plaintiff has failed to establish that remand for an immediate award of benefits is warranted.[37] The Commissioner contends a court should exercise its discretion to direct an award of payments only when the record conclusively establishes that the claimant is

---

[32] *Id.*

[33] Rec. Doc. 20.

[34] Rec. Doc. 20-1 at 1.

[35] *Id.* at 3.

[36] *Id.* at 4 (citing *Arakis v. Commissioner*, 983 F.3d 83, 107 (2020)).

[37] Rec. Doc. 21 at 1.

entitled to such payments.[38] Because the record in this case does not contain uncontroverted evidence of disability during the relevant four-month period, the Commissioner argues an award of benefits by the Court is not appropriate here.[39]

### III. Standard of Review

**A.    *Review of the Magistrate Judge's Report and Recommendation***

In accordance with Local Rule 73.2, this case was referred to a Magistrate Judge to provide a Report and Recommendation. A district judge "may accept, reject, or modify the recommended disposition" of a magistrate judge on a dispositive matter.[40]  The district judge must "determine *de novo* any part of the [Report and Recommendation] that has been properly objected to."[41] A district court's review is limited to plain error of parts of the report which are not properly objected to.[42]

**B.    *Standard of Review of Commissioner's Final Decision on DIB Benefits***

Under 42 U.S.C. § 405(g) the district court has the power to enter "a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."[43] Appellate review of the Commissioner's denial of DIB benefits is limited to determining whether the decision is supported by substantial evidence in the

---

[38] *Id.*

[39] *Id.*

[40] Fed. R. Civ. P. 72(b)(3); *see also* 28 U.S.C. § 636(b)(1).

[41] *Id.*

[42] *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending time to file objections from ten to fourteen days).

[43] 42 U.S.C. § 405(g).

record and whether the proper legal standards were used in evaluating the evidence.[44] "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[45] The Court must review the whole record to determine if such evidence exists.[46] However, the district court cannot "reweigh the evidence in the record, try the issues *de novo*, or substitute its judgment for the Commissioner's."[47] The ALJ is entitled to make any finding that is supported by substantial evidence, regardless of whether other conclusions are also permissible.[48] A court "weigh[s] four elements of proof when determining whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) his age, education, and work history."[49]

## IV. Law and Analysis

### A.    *Applicable Law to Qualification for DIB Benefits*

To be considered disabled, a claimant must show that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment

---

[44] *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005); *Waters v. Barnhart*, 276 F.3d 716, 716 (5th Cir. 2002); *Loza v. Apfel*, 219 F.3d 378, 390 (5th Cir. 2000); *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990).

[45] *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Perez*, 415 F.3d at 461; *Loza*, 219 F.3d at 393; *Villa*, 895 F.2d at 1021–22 (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983); *Randall v. Sullivan*, 956 F.2d 105, 109 (5th Cir. 1992)).

[46] *Singletary v. Bowen*, 798 F.2d 818, 822–23 (5th Cir. 1986).

[47] *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000).

[48] *See Arkansas v. Oklahoma*, 503 U.S. 91 (1992).

[49] *Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995).

which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."[50] The Commissioner has promulgated regulations that provide procedures for evaluating a claim and determining disability.[51] The regulations include a five-step evaluation process for determining whether an impairment constitutes a disability, and the five-step inquiry terminates if the Commissioner finds at any step that the claimant is or is not disabled.[52] The claimant has the burden of proof under the first four parts of the inquiry, and if he successfully carries this burden, the burden shifts to the Commissioner at step five to show that the claimant is capable of engaging in alternative substantial gainful employment, which is available in the national economy.[53]

In this case, the ALJ concluded that Plaintiff has the severe impairments of obesity, myofascial pain syndrome, degenerative disc disease, and degenerative joint disease.[54] The ALJ found that Plaintiff retained the residual functional capacity to lift and carry 20 pounds occasionally and 10 pounds frequently; to stand and/or walk two hours in an eight-hour workday; to sit for six hours in an eight-hour workday; to never climb ladders, ropes, or scaffolds; to occasionally stoop, bend, kneel, crouch, and crawl; to occasionally reach overhead with her bilateral upper extremities; to frequently reach in all other directions; to frequently handle and finger with her bilateral upper extremities; and to occasionally tolerate exposure to uneven

---

[50] 42 U.S.C. § 423(d)(1)(A).

[51] 20 C.F.R. §§ 404.1501 to 404.1599 & Apps., §§ 416.901 to 416.998 (2008).

[52] *Id.* §§ 404.1520, 416.920; *Perez*, 415 F.3d at 461.

[53] *Perez*, 415 F.3d at 461; *Newton*, 209 F.3d at 453.

[54] Adm. Rec. at 297.

terrain.[55] The ALJ determined that Plaintiff was unable to perform any past relevant work, but there were jobs that existed in significant numbers in the national economy that Plaintiff can perform: appointment clerk, order taker, microfilming document preparer, information clerk, and surveillance system monitor.[56] The Court may disturb that finding only if the ALJ lacked "substantial evidence" to support it.[57]

**B.    Did the ALJ substitute her medical opinion for those of the treating and consulting physicians?**

On February 13, 2019, this Court remanded the case to the ALJ because the Court found that the RFC determination was not supported by substantial evidence.[58] The Court's primary concern on the first remand was the lack of evidence supporting the ALJ's original finding that Plaintiff could stand and/or walk for six hours per eight-hour workday and sit for six hours per eight-hour workday. In reaching the RFC determination, the ALJ gave partial weight to the January 6, 2014 report of Dr. Rabito, a consultative examiner, wherein Dr. Rabito opined that the "[m]ost significant of the physical findings w[ere] [Plaintiff's obesity and inability to sustain heel or toe walking due to poor balance and weakness in the lower extremities."[59] Dr. Rabito also opined that Plaintiff "appeared to be capable of normal ambulatory activity, which does not require strenuous and repetitive use of her upper extremities or long periods on her feet."[60] The ALJ gave little

---

[55] *Id.* at 299.

[56] *Id.* at 302–04.

[57] *See Perez*, 415 F.3d at 461.

[58] Case No. 17-10209, Rec. Doc. 17.

[59] Adm. Rec. at 16, 229.

[60] *Id.* at 229.

weight to the April 14, 2016 questionnaire completed by Dr. Hebert, Plaintiff's treating physician, wherein Dr. Hebert opined that standing/walking or sitting for six hours out of an eight-hour workday would "likely cause [Plaintiff] significant pain or exacerbate her condition."[61]

Given the equivocal nature of Dr. Rabito's opinion that Plaintiff "appeared to be capable of normal ambulatory activity, which does not require strenuous and repetitive use of her upper extremities or long periods on her feet," the Court found that there was no evidence supporting the ALJ's finding that Plaintiff could stand or walk for six hours in an eight-hour workday. On remand, the Court ordered that "the ALJ should request clarification from Plaintiff's treating physician and may request a supplemental opinion from the consultative examiner, or both."[62]

The ALJ did neither. Apart from the objective medical evidence in the record, the ALJ rejected Plaintiff's treating physician's testimony and relied solely on the testimony of a non-examining and non-treating physician who had never even seen Plaintiff in a clinical setting. The Magistrate Judge found this was error, and this Court agrees. The ALJ should have contacted Dr. Hebert—or at the very least ordered a further consultative examination—to obtain further evidence regarding Plaintiff's functional capacity evaluation or the effects of Plaintiff's condition on her ability to work.

Whether to remand the case for further proceedings or to award benefits is within the Court's discretion.[63] Where further factual development is necessary or where the ALJ must

---

[61] *Id.* at 16–17, 280.

[62] *Id.* at 22. Case No. 17-10209, Rec. Doc. 17 at 22.

[63] *Bordelon v. Barnhart*, 161 F. App'x 348, 352 (5th Cir. 2005).

further analyze the existing evidence, remand is appropriate, but where such fact finding or analysis is unnecessary, the Court can direct a remand for benefits to be paid.[64]

Unfortunately, Dr. Hebert can no longer be contacted to clarify his opinion as he has passed away. Dr. Hebert's passing makes it impossible for the ALJ to resolve the conflict at issue by simply re-contacting him. 20 C.F.R. § 404.1519a(b)(4) states that a consultative examination will normally be required when "[t]he evidence that may have been available from your treating or other medical sources cannot be obtained for reasons beyond your control, such as death or noncooperation of a medical source." Therefore, remand for a consultative examination would ordinarily be appropriate. However, Plaintiff points out that her date last insured was December 31, 2014, over 10 years ago. She argues a consultative examination would be futile at this time because it would not show anything about her condition from 10 years ago.

Plaintiff's argument is well taken. As numerous courts have recognized, ordering a consultative exam on remand, many years past the date last insured, would not shed light on the claimant's condition as it existed during the relevant period of disability.[65] However, in another case, the district court explained:

---

[64] *See Davis v. Colvin*, 603 F. App'x 257, 258 (5th Cir. 2015); *Reed v. Comm'r, Soc. Sec. Admin.*, No. 08-822, 2009 WL 1574473, at *6 (N.D. Tex. June 4, 2009).

[65] *Garza v. Comm'r of Soc. Sec.*, No. 22-207, 2024 WL 519762, at *13 (E.D. Cal. Feb. 9, 2024) ("Ordering such an examination at this point would not be helpful as it would not reflect her functional status 4 years ago."); *Halter o/b/o Halter v. Comm'r, SSA*, No. 21-262, 2022 WL 7353200, at *15 (E.D. Tex. July 7, 2022), *report and recommendation adopted*, No. 21-262, 2022 WL 4587845 (E.D. Tex. Sept. 29, 2022) ("Further, the ALJ stated at Hearing that any further consultative exam would not likely change her disability finding because the relevant period of disability had long since passed, and thus any additional report on remand would similarly not result in a different determination.") *Chun v. Comm'r of Soc. Sec.*, No. 18-1229, 2020 WL 13556439, at *4 (W.D.N.Y. Sept. 28, 2020) ("Even if counsel's conduct rose to the level of ineffective assistance, any consultative exam that could be performed on remand, five years past her date last insured, would not shed light on Plaintiff's condition as it existed during the relevant period of disability."); *Kameisha v. Colvin*, 100 F. Supp. 3d 200, 208 (N.D.N.Y. 2015) ("The hearing officer determined that he did not need additional medical evidence to make an informed assessment and that a 'consultative exam would be unenlightening as to [Kameisha]'s condition over [three] years ago," the last date for which he would

A remand for the purpose of a present-day consultative exam would be difficult at the present time because plaintiff's neck and shoulder problems now are not the same as they were prior to her date last insured. Nevertheless, if a consultative exam can shed light on plaintiff's condition and residual functional capacity during the pertinent period based on a review of the records before and after that period, the ALJ is permitted to order one in addition to, or in conjunction with, the medical expert review ordered above.[66]

Similarly, a consultative examiner could review the records from before and after that period to shed light on Plaintiff's condition and residual functional capacity during the pertinent period. Therefore, the Court concludes that remand for further proceedings is appropriate in this case. There are important and unresolved aspects of Plaintiff's claim, which should first be addressed by the ALJ.

Accordingly,

**IT IS HEREBY ORDERED** that the Court **OVERRULES** Plaintiff's partial objection and **ADOPTS** the Magistrate Judge's recommendation;

---

be able to receive any benefits. This Court rules that the hearing officer was reasonable in deciding that he had sufficient evidence to assess Kameisha's disability status. Moreover, it strikes the Court as correct to say that a new consultative examination would shed little light on Kameisha's past disability.");*Almodovar v. Astrue*, No. 11-9227, 2012 WL 3809743, at *9 (C.D. Cal. Aug. 31, 2012) ("[A] consultative examiner would have been of no assistance because a present-day examination would not be able to shed any light on plaintiff's condition and RFC prior to the DLI."); *Battaglia v. Astrue*, No. 11-2045, 2012 WL 1940851, at *10 (E.D.N.Y. May 29, 2012) (finding that the ALJ correctly noted that ordering a consultative examination five years after the date last insured would not be probative of claimant's condition during the relevant period); *Nesheiwat v. Astrue*, No. 10-937, 2011 WL 7629494, at *9 (N.D.N.Y. Jul.13, 2011) ("Simply ordering an examination that could provide nothing relevant to the ALJ's determination would not have developed the record.").

[66] *Trefcer v. Astrue*, No. 11-1436, 2012 WL 2522147, at *6 (E.D. Cal. June 27, 2012).

**IT IS FURTHER ORDERED** that the case is **REMANDED** to the ALJ for additional proceedings consistent with this opinion.

**NEW ORLEANS, LOUISIANA,** this 21st day of March, 2025.

*Nannette Jolivette Brown*

**NANNETTE JOLIVETTE BROWN**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**

14